Madam Clerk, please call Case 311-866, Greg Butterfield. 311-866, Greg Butterfield v. Eulenics Finance Section, D.C. Counsel, you may proceed. Good morning, Your Honors. Good morning. May it please the Court, my name is Michelle Jacobs-Kaley. I represent the Plaintiff Appellant in this manner, Mr. Greg Butterfield. Your Honors, this manner involves an appeal of the decision of the Honorable Bobby Petren-Garro, affirming the decision of the Illinois Workers' Compensation Commission, denying plaintiffs' amended petition for penalties and attorney's fees under 820 ILCS 305, Sections 19K and 16. On November 7, 2011, Judge Petren-Garro affirmed the decision of the Commission, which was entered on February 16, 2011, denying plaintiffs' amended petition for penalties and attorney's fees with one commissioner dissenting. I will explain why the Circuit Court erred in affirming the decision of the Commission, and why the Commission's decision is against the manifest weight of the evidence, which is the standard of review. The facts in this case reflect that on May 16, 2007, a lump-sum settlement contract was approved by the Commission. Thereafter, on May 21 and May 22, 2007, that contract was faxed to defendant, as well as mailing a hard copy to defendant at that time. Thereafter, several verbal requests were made for defendant to please forward the lump-sum settlement check, which was followed up by three written requests on June 25, July 3, and July 10, 2007. Defendant had assured plaintiff at that point that the check had been issued and was forthcoming. It was only after a petition for penalties and attorney's fees under Section 19K and Section 16 was faxed to defendant on July 13, 2007, did defendant then issue the check on July 16, 2007, with the check having been received on July 20, 2007, by plaintiff. Didn't the employer offer a plausible explanation? It was a mistakenly issued check in the amount of $33,000. It was discovered. It was reissued. I mean, didn't they offer some explanation? At that point, they did offer that there had been a clerical error in that matter. And defendant stated that there were clerical problems with the check, which did account for the delay. Plaintiff accepted defendant's verbal representation at that point and withdrew their petition for penalties and attorney's fees. Okay. Now, is there any point subsequently where there is any evidence in the record that what they said about these clerical errors was untrue? Yes, Your Honor. At the hearing before Commissioner DiMino, he requested a copy of the voided check that defendant said had been issued and that, as far as I'm aware, has not been produced to date. Okay. Well, let me go back to my question. Is there any evidence in the record that what they said is untrue? I understand that was never produced, but the commission ended up deciding the matter without that evidence. I mean, there hasn't been anything to refute that a check was first issued for $33,000 and then the next one the wrong person signed it. I mean, they sound like there's some kind of games being played, but that's what they said. It's never been refuted, has it? Well, as plaintiff, I can't produce what's not within my control. It would seem to plaintiff, it would be plaintiff's position. Well, you didn't take any steps to require that those things be there before the hearing, right? I mean, Commissioner DiMino on his own made that request. Correct, he did. At the point that counsel represented that to me in 2007, I assumed that, you know, that was the case. They were being truthful. But it's plaintiff's position that not producing what Commissioner DiMino has requested, it would seem to be that if those records were, in fact, a part of defendant's in possession of defendant, that they would be produced to show that that is, in fact, true. Regardless, you got paid some settlement within a little less than 60 days, is that right, something like that? Correct, right around 60 days, but only after the contract or the petition for penalties was faxed, after several requests. And based on that, you're looking for about $250,000? Well, Section 19K states that it's 50% of the amount payable, so that is how I calculated that amount. This is an evacuation drill, but we are exempt, so it's comforting. The settlement contract in this case also provided in part that defendant agreed to be responsible for the liens and claims for all medical bills awarded by the arbitrator, including but not limited to the claims and liens of the group health carriers. However, in November of 2007, the group health carriers were requesting plaintiff that they reimburse for the Wait, we could wait just a minute, I can't hear you. All applicants and visitors proceed to various purposes, farewell, and re-enter on the 17th floor. They're doing them by floors, so this should... Correct, re-enter on the 16th floor. I hope they get it better when it's real. This may be the only oral argument you ever have for a settlement settlement. You can talk about it for years. Well, we're exempt. Not really. This is the 18th floor, too. No. Requiring assistance. Station. It's only five wheelchairs up here. I think it's over. Famous words. Are you a prognosticator? I would expect more from the PJ. Yeah. Now we know why John's not here. I'm going to leave the checklist to see if this will continue. I don't want to... That's fine. It's five floors. I guess most of this is three floors. This is just a settlement. Yeah. Focus. Yeah. I think we're free now. You may continue. Thank you. In November 2007, the group health insurance carriers were contacting plaintiffs and pursuing collection of the amounts that were owed to them. Defendant was advised at this point in time that the group health carriers were, in fact, seeking reimbursement for their liens and claims. Defendant requested plaintiff at that point to provide them with the adjuster's contact information, which plaintiff did. And when you say pursuing collection, they sent you a letter? They were calling me, Your Honor. But they didn't file any lawsuit. They didn't send any letters to your client directly. It came to you, right? Correct. Okay. To further clarify that, the actual writing, tell us if we're misinterpreting this, was that the employer would be responsible, quote, unquote, is the way it read for the liens and medical bills, they would hold your client's claimant and his wife harmless. And as Justice Stewart had suggested, nobody was actually sued anyway. They didn't say they would pay all these bills up front. They said they would hold your clients harmless. There is a subtle legal distinction there. Well, they agreed to be responsible for the liens and claims. And in my briefs, I have set forth the definition of responsible. Well, why weren't they responsible if nobody ever had, nobody was sued and nobody was a subject of collection proceedings? How were they not responsible? I'm sorry, what? No action was taken against your clients. How was the employer not then responsible? Well, they hadn't filed anything at that point. But one can surmise that if they're not paid at some point, something will be filed. But the language in the contract, I believe, also said anything that's filed or to be brought to be filed or something to that effect. Well, let me ask this question. I mean, under your interpretation of the settlement agreement, was the employer free to negotiate these liens? Yes, they were. Well, if they were free to negotiate them, isn't that different than they just had to pay whatever the dollar amount was? Because it takes two people to negotiate. I'm not saying they had to pay, you know, exactly the dollar amount that was whatever the lien was. Well, but if they're going along for a period of time saying we'll pay you this and the lien holder says no, that's not enough, but we'll take this, and that's going along over time or whatever, and then they pay it, haven't they? As of November of 2007, it's plaintiff's position that nothing had been done. There was no contact at all. Was there a time limit in the agreement? No, there was no time limit in the contract. But certainly at the point where the group health insurance carriers are contacting plaintiff and pursuing collection of those liens and claims and defendant is advised that that's happening, they then need to be responsible, as the contract states, for those liens and claims of the group health insurance carriers. So your claim of delay really then is from May until the following January, from the date the contract was signed until you were contacted by the group health carriers? I'm sorry, what did you call me? Your claim for unreasonable delay, okay, is from May when the contract was signed until January when you got contacted by the group health insurance carriers. The health care providers, and then you provided them with the adjuster's name. And then they started negotiating. I was originally contacted in November of 2007. In November, okay. Correct. Okay, well, then from May to November. The contract was forwarded to a defendant in May of 2007. And at that point, they were certainly free to negotiate the liens and claims at that point, but they chose to do nothing. And then in November, when the group carriers were pursuing plaintiff for collection, they chose to continue to do nothing. In January of 2008, when the group health carriers were again contacting plaintiff, again pursuing collection of those liens and claims, they continued to do nothing again. Thereafter, plaintiff's amended petition for penalties was filed for penalties and attorney's fees under Sections 19K and 16, as at that point, it was becoming doubtful that defendant's representations that a clerical error had occurred in the check, those statements were becoming doubtful as well. And as the record will show, defendant continued in the dilatory tactics of not being responsible for those liens and claims of the two group health carriers until late August 2008 and late November 2008. Well, your time is up then. Thank you. Thank you. And I did credit you for the interference with the evacuation. Okay, thank you. You'll have time on your clock. Counsel? Good morning, Your Honors. May it please the Court. Counsel, my name is Stephen Friedman. I represent the Respondent-Defendant Appellee New Lenox Fire Protection District. We are seeking affirmance of the commission decision as affirmed by the Circuit Court denying petition for penalties under Section 19K and attorney's fees under Section 16. Counsel correctly noted that the standard here is whether the decision of the commission is against the manifest way to the evidence. I should also point out that the cases uniformly state that whether to assess penalties is a discretionary act of the commission. The commission heard these matters and found discretionary. Isn't the standard in review abuse of discretion? The cases indicate that in looking at these cases, that the commission has discretion with which to award penalties. But that's my question. If the commission has discretion, isn't our standard of review abuse of discretion? It's not what the case law says. The factual findings of the commission are judged on a manifest weight standard. Whether to apply the penalty or not apply the penalty is viewed on an abuse of discretion basis. I believe that that is a logical extension of what the case law says, although that specific holding is not contained in any of the cases. It also, the Bogue case specifically notes that the determination of penalties is extremely factual and is a case-by-case basis, cognizant of these standards. I believe the commission decision in this matter was correct. And I'd like to break it into, number one, whether the payment of the award or the settlement, the $330,000, 52 days after receipt of that approved settlement contract, was appropriate. And then secondly, with respect to the issue concerning the payment of the group liens. Cutting to the chase, what was the essential reason why the check wasn't sent out for 59 days? What happened? Well, let's look at the timeline. The contract is approved on the 16th. It isn't faxed to our office until the 21st, and the copy is illegible. These are pink papers that are being faxed. Technology, you know, is improving, but it's still not perfect. So we don't actually receive the hard copy until the 29th of May. It's mailed off to the adjuster. They represent to us, and as represented to the commission, that the initial check was wrong. They reissue it, but check if this amount is issued by the wrong person. They get it done. They get it to counsel within 52 days of our receipt of the approved settlement contract. The Armour-Eckridge case talks about, you know, administrative issues, 78 days, finds that that was not an unreasonable delay. Not only that it wasn't vexatious, but it wasn't unreasonable. And the cases make a clear distinction on 19K penalties and attorney's fees that you need to show some type of an intent, some type of wrongful intent with respect to this. There is none in any of the, in the record here. You don't even have an unreasonable delay based upon the Armour-Eckridge case, which was longer than this one. The fact that counsel filed for penalty petition barely 30 days after our receipt of the, and then it's issued out, her demand on the 25th of June, which is less than 30 days after we received the settlement, and then repeated short-term additional may indicate a zeal to obtain the check, but the number of times you request something doesn't make the timeframe unreasonable. With regard to the delay or the issue of the whole harmless, whether or not the employer fulfilled their responsibilities, what is your response to her point? I mean, recognizing that the agreement seems to indicate there's a difference between requiring the employer to just simply pay the bills, which I don't think is the case, versus holding the claimant harmless. But she raises this point. She says, well, you know, understanding that my clients were sort of being harassed, they're getting these phone calls, it's sort of akin to collection proceedings being instituted, and nothing's happening. How do you respond to that? Well, let's keep tabs on the timeframe here. This accident occurred in 1994. These settlement contracts were signed and approved in May of 2007. You're 13 years later than some of these bills. The contract specifically indicates that we will hold them harmless, defend, indemnify them. This was a disputed case. This case was in litigation at the commission for nine years before the settlement was finally reached. So there were significant disputes over who was responsible for these bills. The very reason that the group carriers ended up paying them. Clearly, there was an option with the words defend and indemnify that it was envisioned within the terms in order to give these terms in this language, meaning that we had the option, if we chose to deny and defend, that these bills were not work-related or not related to this case, to actually defend a lawsuit. The agreement contemplates that the employer would have the right to negotiate, if you will. Negotiate or simply deny and litigate the issue of them, based on the terms of the settlement. Counsel indicates that, and let's also recognize that often the group carriers make no effort on a bill this old to make any type of recovery. These bills were paid. This isn't a doctor calling the petitioner saying my bill is outstanding. This is a group carrier, an insurance company that's paid it, that may or may not seek this further. In November, counsel indicates that there was a first contact. She indicates it was to her office. By this time, recognizing the case is settled, we turn it over to the insurance company. Within two months or three months, depending on whether it was early November or late hasn't been resolved, and her petition for penalties is filed within a week. It's clear from the documents and the exhibits that these group liens were, in fact, ultimately negotiated, compromised, and paid, pursuant to the terms of the settlement and the rights that Respondent provided. Petitioner didn't make any payment on them. They did not have to make a payment. They were never sued. They were never forced to defend anything. And Respondent has, in fact, accommodated that. Again, looking at the time frame with respect to this, you have bills that were 13 years litigation that went on for 13 years at the Commission. The fact that the resolution of these bills took from November to either September or November a year later clearly is within the contemplation of what it would take to negotiate something of this magnitude. Respondent would submit that the Commission decision is correct, that there was no unreasonable delay, certainly no evidence presented indicating any intent or any improper purpose in this other than the process of accommodating and accomplishing both the administrative issuance of the check and the dispute negotiation and resolution of the medical bill. So we would ask that this be affirmed. Thank you, Counsel. Counsel, you may reply. Defendant stated in its brief that Defendant agreed to assume the risk if the group carrier sought reimbursement for their payments, then Defendant would be responsible and hold Plaintiff and his wife harmless. Yet it took them another several, you know, months and months after they were notified that that's what was in fact occurring to finally resolve the bills. I've set forth several inconsistencies in Defendant's misrepresentations or statements and misrepresentations in the record and the briefs. Defendant's conduct in this case was not the result of a simple inadvertence or neglect. The Defendant here made an intentional decision not to honor, timely honor its obligations under the settlement contract. The Defendant's delay in this case served no purpose other than to delay the payment of compensation, which are what penalties under Section 19K are designed to prevent. The Plaintiff is respectfully submitting that the facts in this case show that an opposite conclusion is clearly apparent and hence the decision of the Illinois Workers' Compensation Commission is against the manifest way to the evidence. There is not sufficient factual evidence in the record to support the Commission's decision and Plaintiff respectfully requests that this Honorable Court find that the Illinois Workers' Compensation Commission's decision is against the manifest way to the evidence and that it would be an abuse of discretion in this case not to award penalties and attorney's fees in this case. Plaintiff respectfully requests that this Honorable Appellate Court find that the decision of the Circuit Court confirming the decision of the Illinois Workers' Compensation Commission is reverse and reverse the Commission's denial of penalties under Sections 19K and attorney's fees under Section 16. Thank you, Your Honors. Thank you, Counsel. Thank you, Counsel, both, for your argument in this matter. We'll be taking it under advisement, written disposition will issue.